SCHWAB, Respondent, vs. SMITH, Appellant.

*October 4—October 25, 1910.*

*Corporations: Compelling transfer of stock on the books: Affidavits.*

1. In a proceeding under sec. 1752, Stats. (1898), to compel transfer of corporate stock the court may decide the matter upon the affidavits of the parties, or may receive evidence from either side.

2. An order requiring the transfer to be made, based upon affidavits, will be sustained on appeal if there was any reasonable ground for holding that appellant's affidavit did not satisfactorily meet the case made by that of the respondent.

3. An order requiring the transfer of stock is *held* proper in this case upon affidavits which justified the trial court in concluding that the certificates had been duly assigned and delivered to a *bona fide* purchaser for value, and that the secretary's refusal to make the transfer on the books was for the purpose of gaining time to commence an action against the assignor and therein to attach the stock, which he afterwards did.

4. Ordinarily the transfer of stock on the books of a corporation may be made by the secretary acting alone, even though it may be necessary for the president to join in the issuance of a new certificate.

APPEAL from an order of the circuit court for Washburn county: A. J. VINJE, Circuit Judge. *Affirmed.*

Proceedings under sec. 1752, Stats. (1898), to compel transfer of corporate stock.

The application was on affidavit of *Sallie S. Schwab,* stating these to be the facts: August 20, 1909, for a valuable consideration, *Sallie S. Schwab* purchased from J. L. Schwab fourteen shares of the capital stock of the Shell Lake Boat Company, a duly organized Wisconsin corporation, of the par value of $100 per share. He was owner thereof, held the certificate therefor, and in writing transferred it to her. On the next day, at 9:20 a. m., she tendered such certificate to *J. M. Smith,* secretary of the corporation, for cancellation and demanded a due transfer of the stock on the corporate books,

which he neglected to do, the pretense being that he could not comply till afternoon because of absence of the president. That excuse was to enable him to levy on the stock before it could be transferred, to collect a claim he had against Mr. Schwab. *Sallie S. Schwab* called on *Mr. Smith* later in the day and demanded a transfer of the stock to her on the corporate books, which he refused, informing her that it had been attached. He has ever since refused to make such transfer. The application was opposed by the affidavit of *Mr. Smith,* to this effect, so far as material: August 20, 1909, *Sallie S. Schwab,* for a good, proper, and valuable consideration, did not purchase from J. L. Schwab fourteen shares of the capital stock of the Shell Lake Boat Company, a duly organized Wisconsin corporation, said stock being of the par value of $100 each. Neither said shares of stock nor any such shares were, nor was any certificate for any such shares delivered to said *Sallie S. Schwab* before the attachment hereafter referred to. Said shares of stock were not purchased by her, nor did she pay any valuable consideration therefor. About 9 o'clock August 21, 1909, she and J. L. Schwab called on *Mr. Smith* at the bank where he was cashier, Mr. Schwab having some certificates of stock in the Shell Lake Boat Company in his hands. He said: "I want to transfer this stock to my mother." He did not state her name or show any written transfer of stock to any one, or ask to have any stock transferred on the books. The office of the Shell Lake Boat Company was about one mile from where the conversation occurred, rendering it inconvenient to then make any transfer. Mr. Schwab was then indebted to *Mr. Smith* in the sum of $226. He there offered him a certificate for three shares of the stock in settlement. *Mrs. Schwab* was present and heard all that was said and neither made any demand for a transfer of stock to her or objection to use of some of the stock by her associate to pay his personal debt. Upon the

latter going away he said: "I will see if I can't find some way in which to make you transfer it." He had the certificates in his hands from first to last and did not, at any time, tender them for cancellation or state that they had been transferred in writing, or otherwise, to *Sallie S. Schwab.* It was necessary to have the president or vice-president sign certificates of stock. The by-laws provide that certificates of stock shall only be transferred on the books of the association. Notice to that effect is indorsed on the certificates. Four o'clock after the conversation above mentioned *Mrs. Schwab* and Mr. Schwab again visited *Mr. Smith* at the bank. She had in her hand a paper which appeared to be a certificate of stock and, presumably, the one referred to before. She laid it down on the desk and said: "I demand a transfer of this stock." *Smith* informed her he could not comply because it had been attached. She did not say she owned the stock or that it had been transferred to her. They left the bank, Mr. Schwab saying no papers had been served upon him. The stock was in fact levied on before the last conversation occurred. At the time of the occurrence mentioned Mr. Schwab was, and still is, indebted to the Shell Lake Boat Company.

A copy of the officer's return to the attachment proceeding showing that the stock had been, in due form, attached as the property of J. L. Schwab in a suit by *J. M. Smith* against him, was made a part of the affidavit.

On such affidavit an order was granted requiring *J. M. Smith* to transfer the stock referred to on the books of the corporation to *Sallie S. Schwab,* upon delivery of the duly assigned certificates and to, in due form, issue and deliver a new certificate.

The cause was submitted for the appellant upon the brief of *C. H. Mead,* and for the respondent on that of *W. N. Fuller.*

MARSHALL, J.    Sec. 1751, Stats. (1898), provides that "The delivery of a stock certificate of a corporation to a *bona fide* purchaser or pledgee for value, together with a written transfer of the same signed by the owner of the certificate, his attorney or legal representative shall be a sufficient delivery to transfer the title as against all persons," subject to some restriction, not material to this case.    Sec. 1752 provides that, upon its appearing to the court, "by affidavit or otherwise, that the secretary or other proper officer of any corporation has, upon proper demand, neglected or refused for two days to transfer on the stock books of" a "corporation any stock which it is his duty to transfer," proceedings to determine the right of the matter shall be had as indicated, and that unless the alleged defaulting officer shall satisfy the court that the stock should not be transferred, it "shall order such transfer to be made by said secretary."

It will be seen from the foregoing, in connection with the statement of facts, that respondent's affidavit required the court to cite appellant, as was done, to show cause why he should not transfer the stock, and if his affidavit did not clearly state facts justifying him in his refusal to make the transfer, the order coercing him to that end necessarily followed.

It is suggested that the affidavit on the one side was in the nature of a complaint and the affidavit upon the other in the nature of an answer, and that, since the latter put the material allegations of the former in issue, it was error for the court to decide in respondent's favor in the absence of evidence other than her affidavit.

The statute does not prescribe any method of trying such a controversy.    It simply provides a method of making a case by affidavit on the one side and that it shall prevail, unless satisfactorily disproved by the adverse party.    Doubtless the court was competent to decide the matter upon the affidavits or to receive evidence from either side, had any been offered,

but was not required to regard appellant's mere evasive denial as satisfactory.

The statute contemplates that the opposing affidavit shall be viewed in the nature of a pleading and as evidence as well and that the court shall weigh the probabilities appearing thereby and decide accordingly, the burden of proof being on the one refusing to transfer the stock.

Doubtless if appellant had offered to support his affidavit by evidence the court would have permitted it. He did not take that course. He submitted the case on the two affidavits.

From the foregoing it appears that the decision of the trial court must be sustained, if there was any reasonable ground for holding that appellant's affidavit did not satisfactorily meet the case made by respondent's affidavit. The allegations in the latter were positive and ample. At the very best, if the allegations of appellant's affidavit had been likewise positive and ample, there would have been merely the oath of one person opposed to that of another, with still, perhaps, some opportunity in the surrounding circumstances to hold that the showing on appellant's part was not satisfactory. But the affidavit of appellant was in fact evasive. While it contained words of denial as to some of the things having occurred, mentioned in respondent's affidavit, precisely as alleged, it left room for belief at some points, and suggested very strongly in others, that the very things referred to did occur substantially as claimed and that it was the duty of appellant to make the formal transfer of the stock on the corporate books.

The idea is conveyed by appellant's affidavit that if there were a refusal to transfer the stock, it was justifiable because he was absent from where the stock books were kept; that it was therefore not convenient to then act in the matter; and for the further reasons that the president was absent and it was necessary to have him sign the new certificate. But there is no showing that any such excuse was made to respondent.

Furthermore, though the presence of the president was necessary to issuance of a completed new certificate, it was not necessary to a transfer on the books of the corporation.    A transfer is one thing, an issue of the certificate another.    The secretary and the president join in the latter, but the former, ordinarily, is within the competency of the secretary to do, acting alone.

On the whole, there was ample room, it seems, from the character of appellant's affidavit, for the court to believe that the allegations of respondent's affidavit were true; that a demand for a transfer at the corporate office, where the books were at hand, was unnecessary, since appellant was bent on obstructing respondent's purpose to have the transfer made till he could secure a levy on the stock for his own private purposes.

Doubtless appellant thought that if he could obtain the levy before an actual transfer of the stock on the corporate books was made, the sale of the stock to respondent, if one had occurred, would thereby be superseded.    That seems to have been his state of mind and to explain his movements consistent with everything having been done as respondent claims, entitling her to have the stock transferred.

As we have seen, when respondent obtained possession of the stock certificates for value, duly assigned to her in writing, she was the owner as against any claim of an attaching creditor of her assignor.    If she had not obtained such possession before the first visit but did before the last one and prior to the attachment, that was sufficient.    The mere fact that the levy antedated the second visit was not of itself any justification for refusing to make the transfer.    It follows that the order appealed from must be affirmed.

*By the Court.*—So ordered.

VINJE, J., took no part.